### R. W. TOOKER *v.* HENRY GROTENKEMPER.

The words, "grants, demises, and leases," in the absence of other covenants in a lease, imply a general warranty of quiet possession to the lessee. But where there is a covenant for quiet enjoyment, as regards the lessor or those claiming under him, no such general warranty exists. The implied covenant can not be broader than the express covenant.

The grantee of the equity of redemption, in property mortgaged by a former owner, leased the premises with the above covenant. The mortgagee foreclosed, and ousted the lessee. *Held*, the lessee had no right of action against his lessor.

RESERVED TO GENERAL TERM.—The facts appear in the opinion.

*E. P. Bradstreet,* and *Lincoln, Smith & Warnock,* for plaintiff, cited *Howes* v. *Brushfield,* 3 East, 491; *Lock* v. *Furze,* 1 Com. Pl. (L. R.) 441; *Robinson* v. *Harman,* 1 W. H. & G. (Ex.) 850; *Rolph* v. *Crouch,* 3 Ex. (L. R.) 44; *Foote* v. *Burnett,* 10 Ohio, 317; *Childs* v. *Childs,* 10 Ohio St. 339; *McAlpin* v. *Woodruff,* 1 Disney, 339; *Same Case,* 11 Ohio St. 120; Sedgwick on Damages, pp. 58, 77, 78, 86, 176, 196–198.

*Hoadly, Jackson & Johnson,* contra.

HAGANS, J. It appeared that one Henry Rosenham executed two mortgages, in March, 1865, to Samuel N. Pike, to secure a large amount of money, on certain premises on the south side of Fourth street, known as No. 255 West Fourth street; that in June, 1867, Rosenham being then the owner of an equity of redemption in said premises, conveyed it to the defendant in consideration of $7,000, a sum much less than the actual value of the premises; that on the 8th of November, 1867, said defendant leased to the plaintiff the same premises for a term of three years, with the privilege of two years more, at the annual rent of $2,000, payable monthly, and the defendant covenanted, among other things, that if the plaintiff observed and kept his covenants and paid the rents, that he should "lawfully, peaceably, and quietly hold, occupy, and enjoy said premises, during said term, without any let, hindrance, ejection, or molestation by said lessor, or his heirs or assigns, or any person or persons lawfully claiming under them." The plaintiff entered into the possession and enjoyment of the premises under the lease.

On the 18th of January, 1868, Pike, the holder of the Rosenham mortgages, then amounting to about $22,000, brought suit to foreclose them; to which suit, both plaintiff and defendant were made parties, and the plaintiff filed his answer, setting up his lease and praying the protection of the court. The premises were sold, the sale confirmed, and the court found that plaintiff "had no

interest in, or right of possession to, the premises as against the said Samuel N. Pike," and decreed a conveyance to the purchaser. This decree was entered June 3, 1868, from which it appears that the property sold for less than the incumbrances on it. The petition in this case alleges, and it is admitted, that in August, 1868, less than a year after the making of the lease, the purchaser, at the sale under the proceedings in foreclosure, gave the plaintiff legal notice to quit the premises within thirty days, or be ousted by legal process, and thereupon he was compelled to remove summarily therefrom.

It seems that the plaintiff used the house for the treatment of diseases by the "Swedish Movement Cure," being in the nature of a hospital, and requiring a large amount of machinery, apparatus, and appliances. He avers that he described to the defendant the uses to which he proposed to put the property before the execution of the lease, and fitted it up accordingly at a considerable expense, and expended for advertising other sums of money, in all amounting to $1,193.24, the details of which appear in the proofs; that the house was full of patients and his business prosperous; that he removed from the premises, in consequence of the notice to remove, his patients, together with his whole establishment, to the interruption and partial breaking up of his business, and that he found it impossible to find another house having the size and other advantages of the one he had leased from the defendant. It is admitted that plaintiff paid his rent up to the sale under the proceedings in foreclosure, and in other respects observed the covenants of his lease. Upon these facts he demands judgment for two thousand dollars damages against the defendant.

It appeared in the testimony of the defendant that the lease or term was worth nothing, or at least had no market value, though plaintiff stated that he had sublet portions of the premises, so that the premises cost him, in rent, only $900 per annum. He also stated that he was obliged

Tooker *v.* Grotenkemper

to pay for his present establishment, on Fifth street, $1,200 per annum rent, and one witness testified that the size, location, and adaptation of the Fourth street premises made them more desirable and preferable compared with the Fifth street premises, and that " the difference in dollars is considerable."

The defendant denied that plaintiff was obliged to vacate the premises, but ·did so voluntarily; and denied any damage from any act of his, or any damage whatever, or any indebtedness.

The cause was reserved here for the decision of this court on the law and the evidence.

Two questions present themselves: *First,* Is defendant liable at all? and *Second,* If so, to what extent?

There is an allegation in an amended petition that the defendant, in the purchase from Rosenham, assumed the payment of the mortgages to 'Pike.

No answer is filed to this amended petition, and no proof of any written or express verbal assumption of the mortgage debt appears. But, under this undenied allegation, we should be bound to conclude that the defendant, by a contract to pay the mortgage debt, had devolved upon himself the legal duty to do so. And out of this legal duty we think there could be no doubt that there would arise, on the part of the defendant, the obligation to make good any damages for a breach of the covenant for quiet enjoyment contained in this lease. *Howes* v. *Brushfield,* 3 East, 491.

On the argument, however, any such assumption by the defendant of the mortgage debt was denied. Leave was asked to file an answer to the amended petition, to which the party is entitled. We are to consider the case, then, as if such a denial were made; and the allegation untrue.

In this lease the defendant " grants, demises, and leases " to the plaintiff the said premises. These words, in the absence of any other covenant, imply an undertaking, on the part of the lessor, that the lessee shall have undis-

turbed possession during the term; and the law supposes that when a man makes such a lease he has a good title to the property and power to lease it.   Taylor's Landlord and Tenant, pp. 214, 216, and cases cited.

The covenant extends to possession only, and means that the lessee shall not be evicted by paramount title.   But here, the implied covenant for quiet enjoyment generally, contained in the words "grant and demise," is limited and restrained by the terms of the express covenant for the quiet enjoyment of the lessee "without any let, hindrance, ejection, or molestation by said lessor, or his heirs, or any person or persons lawfully claiming under them."   The implied covenant shall never be broader than the express covenant

The case of *Howes* v. *Brushfield*, 3 East, 491, was cited to us as conclusive of this case; but there the court held that the vender, conveying by the usual words "give and grant," and covenanting for quiet enjoyment against his own default, was liable for rent due at the time of the conveyance, though it did not accrue during the time the vendor held the estate.   *Expressum facit cessare tacitum.* *Merrell* v. *Frame*, 4 Taunt. 329; *Kent* v. *Welsh*, 7 Johns. 258.

There is nothing in this lease or in the testimony, that puts on the defendant any obligation to pay these mortgages.   He could do so or not as he chose; and there rested against him no personal liability in favor of the mortgagee if he did not choose to pay them, even if the property was insufficient to satisfy the mortgage claims.   In the transaction he had at risk the equity of redemption merely, which he had purchased, and which he might lose if he chose to do so.   It will be observed that the defendant at no time held the legal title to this property—only an equity of redemption.

The mortgagee had the legal title, and after condition broken had the right of entry and possession of the premises.   Suppose he had done so and evicted the plaintiff,

would there have been any action against the defendant on the covenant for quiet enjoyment? We think not. But, instead of doing this, he brought his action to foreclose the mortgages, and under him, by virtue of that proceeding, the purchaser took title, and it was that title that ousted the plaintiff.

"Ever since *Frische* v. *Kramer's Lessee*, 16 Ohio, 125," says the Supreme Court in *Childs* v. *Childs*, 10 Ohio St. 399, "it has been regarded as the settled law of this State, that the purchaser at a judicial sale in such case acquires the title of the *mortgagee.*" The purchaser claims under him, and had the same right to enter and occupy the premises which the mortgagee had prior to the sale, after the condition of the mortgage was broken. The effect of the decree and sale is simply to bar the equity of redemption.

Of the condition of the title the plaintiff is chargeable with notice, being of record, and it must be presumed that he took possession subject to the contingency that actually happened and for which the lease provided. The covenant has reference merely to the undisturbed possession of the lessee and not the lessor's title. And we have seen that the parties have limited the liability of the defendant to a case which has not happened. *Bricker* v. *Bricker*, 11 Ohio St. 240; *Waldron* v. *McCarty*, 3 Johns. 464.

As was said by the court in 11 Ohio St. 240: "It was the right of the parties to make their own contract, and whether general or special, it can only have effect according to their express terms. The covenant against incumbrances was a special one, being only in regard to incumbrances "done or suffered" by the grantors. The incumbrance complained of was imposed upon the lands by others and before Waddel had acquired the title, and does not appear to have been done by his act or assent, and is not therefore within his covenant against incumbrances;" and there was judgment for the defendants, though there was a cove-

nant of general warranty in the conveyance made by Waddel.

Our Supreme Court have thus decided the principle of this case, and this view of it makes it unnecessary to pass on the other points suggested to us, or to examine the authorities cited.

There must be judgment for the defendant.